69 N.J. Super. 559 (1961)
174 A.2d 601
TOWNSHIP OF PRINCETON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, IN THE COUNTY OF MERCER, APPELLANT,
v.
TENACRE FOUNDATION, A CORPORATION OF THE STATE OF NEW JERSEY, AND DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1961.
Decided October 23, 1961.
*560 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. Henry M. Stratton, II argued the cause for appellant.
Mr. Francis E.P. McCarter argued the cause for respondent Tenacre Foundation (Messrs. McCarter & English, attorneys).
Mr. David D. Furman, Attorney General of New Jersey, filed a statement in lieu of brief on behalf of respondent Division of Tax Appeals, Department of the Treasury, State of New Jersey (Mr. Alan B. Handler, Deputy Attorney General, of counsel).
The opinion of the court was delivered by SULLIVAN, J.A.D.
The Township of Princeton levied an assessment for the year 1960 on a certain building owned *561 by Tenacre Foundation. On appeal by the Foundation, the assessment was affirmed by the Mercer County Board of Taxation. On further appeal by the Foundation to the Division of Tax Appeals, the assessment was cancelled. The Township of Princeton now appeals.
There is no dispute as to the essential facts. Tenacre Foundation is a non-profit corporation of the State of New Jersey organized under the provisions of R.S. 15:1-1 et seq. It maintains and operates a sanitorium and nursing home for the care and treatment of the sick in accordance with the tenets, and under the auspices of, The First Church of Christ, Scientist, Boston, Massachusetts (the Christian Science Church). It is licensed by the State of New Jersey as a mental hospital, as a nursing home and as a home for sheltered care.
The institutional buildings are located on several large contiguous tracts of land on the east side of Great Road in Princeton Township. The township concedes, for the purposes of this appeal, that Tenacre Foundation is a corporation "organized exclusively for religious, charitable or hospital purposes, or for one or more of such purposes," so that, in appropriate cases, its property or portions thereof are entitled to tax exemption under N.J.S.A. 54:4-3.6.
This appeal involves the question whether a building used as the residence of the director of Tenacre is exempt from taxation under N.J.S.A. 54:4-3.6. The building is located on the Foundation grounds on a separate lot which fronts on Great Road. It is a substantial single-family seven or eight-room house with two and one-half baths built by the Foundation in 1959 and 1960 at an approximate cost of $58,000. It was built as a residence for the director of Tenacre with funds contributed by a donor who specified that his gift be used for that purpose.
The house is used by the director as a permanent year-round residence for himself and his family, consisting of his wife and her mother. It is also used for many Foundation activities and purposes. Property and records of the *562 Foundation are stored in the basement. The regular monthly meetings of the board of trustees, small staff conferences and staff receptions are held there. The house has a guest suite which is used by official guests. Official entertainment frequently takes place at the house, with the director's wife as hostess, she also being employed by the Foundation. There is a study on the second floor of the house where the director attends to a considerable portion of his duties, although he does maintain an office elsewhere on the grounds. The house has an emergency bell which is connected to the central fire alarm system.
The nature and extent of the director's duties are such that he is "on call" virtually 24 hours a day, and the operational convenience of the Foundation is greatly served by the location of the residence of the director in close proximity to the institution itself. He is a combination business manager and hospital administrator, being responsible for the hiring and transportation of help, supervision of the day and night staffs of 100 persons, and supervision of the maintenance personnel. It is his responsibility to take care of emergency maintenance problems that arise after the maintenance personnel have left for the day. When the director is not available he must provide a relief, and, during his vacation periods someone moves into the director's residence to take over his duties. Although not a formal rule as such, the board of trustees "requires" the director to live on the Foundation grounds. The director's residence is furnished and maintained by the Foundation.
The pertinent provisions of N.J.S.A. 54:4-3.6, under which the Foundation claims tax exemption for its director's residence, provides as follows:
"The following property shall be exempt from taxation under this chapter: * * *; all buildings actually and exclusively used in the work of associations and corporations organized exclusively for * * * hospital purposes * * *." (Emphasis added)
The position of the township is that while concededly the Foundation is "organized exclusively for religious, charitable *563 or hospital purposes, or for one or more of such purposes," and while the director's residence is unquestionably used for many Foundation activities and purposes, the predominant use of the premises is for the permanent personal residence of the director and his family. Therefore, argues the township, the building is not "actually and exclusively used" in the work of the Foundation and comes directly within the ruling of Teaneck Township v. Lutheran Bible Institute, 20 N.J. 86 (1955).
The issue is a narrow one. Is the Foundation director's residence "actually and exclusively used" in the work of the Foundation, within the meaning of N.J.S.A. 54:4-3.6?
It is a fundamental principle of government that ordinarily all property shall bear its just and equal share of taxation. The burden of proving a tax exempt status is upon the claimant, and statutes granting exemption from taxation are strictly construed against anyone claiming an exemption thereunder. Princeton University Press v. Borough of Princeton, 35 N.J. 209 (1961). However, the basic inquiry always is the legislative intent as expressed in the statute. To that end the construction, while strict, must always be reasonable, and words are not to be given a rigid scholastic interpretation when it appears that they were used in another sense. The rule of strict construction must never be allowed to defeat the evident legislative design. Alexander v. New Jersey Power & Light Co., 21 N.J. 373 (1956).
We are dealing here with a sanitorium and nursing home for the care and treatment of the sick. Manifestly, its physical plant is not limited to rooms for the patients. It is an integrated service organization, with facilities which are essential to its proper operation. In addition to accommodations for its patients, it has two nurses' homes, a commissary, a cafeteria, a laundry, a physical care building, a filtration plant, a garage. Obviously, too, it must have administration to see that its services function properly and are coordinated. To that end the facilities include housing *564 accommodations for a resident director who is on call 24 hours a day. His residence on the grounds is essential to the Foundation's operation so that the accommodations provided for him are as much a part of the institution's facilities as the nurses' homes or the laundry.
The precise issue involved has not previously been adjudicated in this State. Other jurisdictions, however, have considered the same or similar questions. For a resume of cases dealing with the tax exemption of property of religious, charitable, educational, or hospital organizations when used by personnel as living quarters see Annotation, 15 A.L.R.2d 1064.
In Cedars of Lebanon Hospital v. Los Angeles County, 35 Cal.2d 729, 221 P.2d 31, 15 A.L.R.2d 1045 (Sup. Ct. 1950), a statute providing tax exemption for "property used exclusively for * * * hospital * * * purposes" was involved. In that case the court, after reviewing the over-all nature of present day hospital operation, used the following test for application of the tax exemption statute.
"It thus appears that under the rule of strict but reasonable construction, the phrase `property used exclusively for * * * hospital * * * purposes' should be held to include any property which is used exclusively for any facility which is incidental to and reasonably necessary for the accomplishment of hospital purposes; or, in other words, for any facility which is reasonably necessary for the fulfillment of a generally recognized function of a complete modern hospital." (221 P.2d, at p. 35)
Thus, the court held that the maintenance of a school for training nurses, and a nurses' home, were incidental to and reasonably necessary for hospital operation. The court went on to hold that
"The same considerations apply with respect to the exemption of hospital property used to provide housing facilities for interns, resident doctors, superintendents, and other members of the hospital staff  that the administration of the affairs of the institution requires that certain personnel and employees be located on or near its grounds to the end that its operation may be efficiently conducted and supervised, and that emergency cases may be effectively handled as they arise." (221 P.2d, at p. 38)
*565 In the instant case the evidence is that the maintenance of a residence for the director on the Foundation's grounds is reasonably necessary for the efficient functioning of the institution. The conclusion, therefore, is that this facility must be considered as being "actually and exclusively used" in the work of the Foundation, within the meaning of the tax exemption specified in N.J.S.A. 54:4-3.6. To hold otherwise would mean that the residential facilities provided by a hospital for its nurses, interns, medical staff, and the like would be subject to the taxation on the theory that they were not being used "exclusively" for hospital purposes. This is not the sense of N.J.S.A. 54:4-3.6.
Nor is the ruling in Teaneck Township v. Lutheran Bible Institute, supra, 20 N.J. 86 (1955), at odds with our interpretation of N.J.S.A. 54:4-3.6. In Teaneck the ministers who taught in the Bible Institute lived with their families about two miles away from the Institute in three buildings owned by the Institute. They conducted some institute activities at these residences, but the Supreme Court held that the "predominant utility" of the buildings was residential and therefore the use was not "exclusively for religious purposes." In the cited case the Bible Institute provided housing accommodations to its minister-teachers and their families as a convenience to them. The maintenance and location of these accommodations were not material to the Institute's operation.
In contrast the instant case presents a situation where the housing facilities are being provided, not for the director's convenience, but rather because it is essential to the operation of the Foundation that the director be available on the premises 24 hours a day to serve the Foundation's needs. In such a situation the Foundation must provide living accommodations for the director on its grounds.
We rest our decision on the proposition that the director's residence, as such, is an integral part of the institution's facilities and, therefore, is actually and exclusively used in *566 the work of the Foundation within the tax exemption provision of N.J.S.A. 54:4-3.6. The conceded use of the residence for many Foundation activities is pertinent only to show that the accommodations provided are reasonably necessary for the director's discharge of his duties.
Affirmed.