HAMILL, J.T.C.
In this matter, plaintiff, St. Ann’s Catholic Church New Hampton, challenges the 1993 local property tax assessment on property located at 534 East Grand Street in the Borough of Hampton (borough). The property is designated as Block 7, Lot 1, on the local tax map, and was assessed for tax year 1993 as follows:
Land: $38,900
Improvements: 60,700
Total: $99,600
The Hunterdon County Board of Taxation issued a memorandum of judgment affirming the original assessment. Plaintiff filed the instant complaint, claiming that the subject properly is exempt under N.J.SA 54:4-3.6 and “other statutes.”
The matter is before me on cross-motions for summary judgment.
The principal issue is whether property located adjacent to a church cemetery and in close proximity to the church, which was acquired by the church for access to and security for the cemetery, is exempt from local property taxation as property reasonably necessary to carry out the purposes of an entity organized exclusively for religious purposes.
The subject property consists of approximately half an acre and an eight-room, single-story residence occupied by Karl Erz, his wife Rebecca, and them five children. The church became the owner of the property pursuant to a transfer of deed dated July 31, 1992, and the Erzes moved into the residence on August 22, 1992. The property is one of four contiguous lots (totaling approximately 7.5 acres of land) owned by the church. The other three lots include Lot 6 (1.85 acre parcel, upon which is situated the church, rectory, and a garage); Lot 8 (4.7 acre parcel which comprises the church’s cemetery); and Lot 9 (0.4 acre parcel upon *77 which there is situated a residence housing seven nuns). The tax status of these other lots is not an issue in this appeal.
The church was incorporated in 1864. Between 1924 and 1929, land was purchased for expansion of the existing cemetery, which was described by Father William J. Hewitt, the church’s pastor, as a “Catholic Cemetery.”
Mr. Erz works 40 hours per week as a carpenter for Thomas Weibe in Hampton. Additionally, he performs maintenance work for the church, takes care of an unused part of the cemetery (but has nothing to do with the interment of bodies in the cemetery), keeps a watch on the cemetery, occasionally closes off the cemetery with a chain, and plows snow during the winter. Church maintenance includes maintaining the church furnace (weekly in the winter, monthly in the summer), taking “care of the exterior lighting, mak[ing] sure the bulbs are all in working orderf,] ... repairing pews and kneelers in the church, and replacing several of the outlets in the rectory.” Taking care of the cemetery involves mowing the grass and plowing snow. With respect to keeping a watch on the cemetery, Mr. Erz stated that the entire cemetery can be seen from the residence, that Mrs. Erz also watches the cemetery, and that Mr. Erz usually walks through the cemetery “a couple or several times a week.” According to Mr. Erz, during 1993 he observed suspicious people in the cemetery on three occasions, two of which turned out to be people visiting graves at night. The third occasion involved someone smoking marijuana. That person left the property, apparently without incident, when told to do so by Mr. Erz. Mr. Erz estimates that he spends forty to sixty hours a month (or 10 to 15 hours per week) doing maintenance work for the church and 6 hours a week (or 24 hours per month) doing work in the cemetery (although that figure increases during the winter in order to clear snow). According to Father Hewitt, the church’s arrangement with Mr. Erz enables church maintenance to be provided for one-third the cost that would be incurred if the church had to hire outside help.
The church and Mr. Erz memorialized an oral understanding in a June 1993 written agreement executed by Father Hewitt and *78 Mr. Erz. The agreement states that “[o]ne of the major reasons for the Owner lie., the church] entering into this agreement with [Mr. Erz] is to provide the presence of the Caretaker-Sexton on the subject premises in the evening hours on substantially a year-round basis.” The agreement precludes Mr. Erz “from accepting evening employment during the period from sunset to sunrise” and requires that he be “personally present on the subject premises adjacent to the cemetery, the rectory and the church during the evening hours when Owner believes vandalism is most likely to occur.” Additionally, the agreement sets forth the maintenance duties that Mr. Erz is required to perform as the church sexton.
In exchange for his services, Mr. Erz does not pay rent to live in the church-owned house.
The property was purchased for two reasons — to prevent vandalism of the church’s properties and to ensure the continuing existence of an exit from the cemetery. Prior to Mr. Erz moving into the residence, there had been acts of vandalism, including one incident in which about twenty headstones were turned over or damaged. Additionally, the church was burglarized twice, once on November 16, 1990, and once in the afternoon on January 26, 1992. Since Mr. Erz and his family moved into the residence on the subject property, there have been no acts of vandalism.
The house is used exclusively as the Erzes’ family residence and to store tools that Mr. Erz uses for church maintenance. No church functions take place on the property. No one besides the Erzes’ immediate family resides in the residence and Mrs. Erz does not conduct any kind of business from the home.
In support of its motion for summary judgment, the borough argues that the church is not entitled to a tax exemption for the subject property under N.J.S.A. 54:4-3.6 because the residence is not actually and exclusively used for religious purposes. Additionally, the borough notes that section 3.6 expressly exempts from taxation parsonages occupied by officiating clergy, and that the “statutory language ... itself demonstrates a legislative intention that residences not so occupied are not to be exempt.” Finally, the borough maintains that since Mr. Erz has a full-time job not *79 related to the church, and Mr. Erz works only 40 to 60 hours a month on church-related activities, Mr. Erz “is not a full-time caretaker of the church,” and “the residence which he occupies is not exempt from taxation” under N.J.S.A 54:4-3.6.
In addition to claiming that the residence is not exempt under N.J.S.A 54:4-3.6, the borough maintains that the residence is not exempt pursuant to N.J.S.A 8A:5-10, which exempts cemetery property of any cemetery company, on the basis that the church is not a “cemetery company,” and because the Erz residence is not used for the operation and maintenance of cemetery lands.
In support of its cross-motion for summary judgment, plaintiff argues that it is entitled to summary judgment under N.J.S.A 54A-3.6. First, plaintiff cites Boys’ Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 401, 371 A.2d 22 (1977), and Fairleigh Dickinson Univ v. Florham Park Bor., 5 N.J.Tax 343 (Tax 1983), for the proposition that “exempt entities may receive an exemption for as many as five acres for each exempt building.” Noting that the church has four exempt buildings (the church building, the rectory, the garage and the nuns’ residence), plaintiff maintains that the church could acquire up to 20 acres of tax exempt property, provided the newly acquired land was “reasonably necessary” to the church’s exempt activities. According to plaintiff, the fact that the subject property is improved with a residence is of no importance because the use of the residence as a residence is de minimis.
With respect to the residence, plaintiff cites Princeton Tp. v. Tenacre Found., 69 N.J.Super. 559, 565, 174 A.2d 601 (App.Div. 1961) for the proposition that the house should be exempt if it is “reasonably necessary for the efficient functioning of the [exempt] institution.” Plaintiff argues that the house is reasonably necessary for the efficient functioning of the church because it “serves primarily as a convenience for the church rather than for the Erz family, which was induced to relocate there ... by Father Hewitt,” and because “the activities of Mr. Erz and his family in helping to maintain and safeguard the entire church property are reasonably necessary to the integral operations of [the church].”
*80 Since there is no genuine issue of material fact, the within matter is ripe for summary judgment. Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 110 A.2d 24 (1954); R. 4:46-2.
The relevant statute in this case is N.J.S.A. 54:4r-3.6, which provides in relevant part:
The following property shall be exempt from taxation under this chapter: ... all buildings actually and exclusively used in the work of associations and corporations organized exclusively for religious or charitable purposes; ... the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State, together with the accessory buildings located on the same premises; the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; ... provided, in case of all the foregoing, the buddings, or the lands on which they stand, or the ... corporations ... using and occupying them as aforesaid, are not conducted for profit____ The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed____[1]
Initially, it is clear that the subject property is not exempt as land not exceeding five acres that is necessary for church purposes. It may be settled that five acres per exempt building may be granted exemption, see Boys’ Club of Clifton, Inc. v. Jefferson Tp., supra, 72 N.J. at 401, 371 A.2d 22, but this case involves an exemption, not for additional lands that may be reasonably necessary for the church’s use, but rather an exemption for an improved lot. A small portion of the lot provides access to the cemetery, but exemption for the balance of the lot and the improvement is available only on the basis that the improvement is occupied by an individual who watches over and maintains the church’s property. The use of the residence is not de minimis but rather the principal ground on which exemption is sought. The fact that, had the church acquired additional vacant land, that land might have been exempt under the five-acre per *81 building allowance is immaterial. The fact is that the church did not purchase vacant land; it purchased an improved lot.
The remaining issues are (1) whether the subject properly is actually and exclusively used for church purposes and (2) whether the subject property is an “accessory building” to the parsonage.
With respect to the parsonage exception, the issue is really a non-issue. Although Mr. Erz has performed work on and in the rectory, by no stretch of the imagination can the subject property be deemed an “accessory building” of the rectory. Rather, it is a residence for the Erz family.
With respect to the exemption for church purposes, as this court pointed out in Clinton Tp. v. Camp Brett-Endeavor, Inc., 1 N. J.Tax 54, 56 (Tax 1980), N.J.S.A. 54:4-3.6 requires that residential premises of certain organizations, including religious and charitable organizations and, at the time Camp Brett — Endeavor was decided, hospital organizations, must be “actually and exclusively used” in the work of the organization. On the other hand', residences of other exempt organizations such as schools, academies, or seminaries, and now hospitals, need only be “actually used” for the organization’s exempt purpose.[2] In Princeton Tp. v. Tenacre Found., supra, the Appellate Division interpreted the requirement of actual and exclusive use to mean a facility that “is reasonably necessary for the efficient functioning of the institution.” 69 N.J.Super. at 565, 174 A.2d 601. Under that test, the court held that the residence of the foundation’s director was exempt. The residence was located on the premises of the foundation, which operated a sanitorium and nursing home for Christian Scientists. The director was “ ‘on call’ virtually 24 hours a day” and his residence was located in close proximity to the institution. The court found that it was essential to the operation of the hospital/sanitorium that the director be available on the premises 24 hours a day and that his residence was therefore “an integral part of the institution’s facilities.” Ibid.
*82 Again construing the hospital exemption, the Appellate Division in Long Branch v. Monmouth Medical Center, 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976), aff'd o.b., 73 N.J. 179, 373 A.2d 651 (1977), held that apartment units located about one and a half blocks from the hospital that were used as residences for residents, interns, and nurses on the hospital’s staff were “reasonably necessary for the proper and efficient operation of the hospital.” Id. at 533, 351 A.2d 756. The provision of nearby housing enabled the hospital to function on a 24-hour basis. The below market rentals enabled the hospital to attract qualified individuals and established that the hospital was using the apartments to carry out its hospital purposes rather than to earn income as a landlord. The apartments were thus an integral part of the hospital’s facilities. Ibid.
To the same effect as Monmouth Medical Center is Perth Amboy General Hospital v. Perth Amboy, 176 N.J.Super. 307, 422 A.2d 1331 (App.Div.1980), in which the Appellate Division held that condominiums located one and a half miles from a hospital that were used to house residents and interns were exempt. The greater distance of the residential properties from the exempt organization did not destroy their exemption because there was a housing shortage in the area and residents and interns typically were married individuals. Id. at 311, 422 A2d 1331.
In Camp Brett-Endeavor supra, after surveying the cases, this court concluded that there is a two-fold test to determine whether a residential property qualifies for exemption under the religious, charitable, and hospital exemptions. First, the residence must be “predominantly used as an integral part of the operation of the exempt organization, rather than being primarily a convenience to the tenant____” Second, the residence must be “reasonably necessary for the proper and efficient operation of the exempt organization.” Camp Brett-Endeavor, supra, 1 N.J.Tax at 60.
In Camp Brett-Endeavor, the facts leading this court to conclude that the residence of the direetor/caretaker was exempt included a demonstrated need for year-round security and maintenance of the camp’s numerous buildings and swimming pool and *83 the use of the residence for camp administration. There had been a security problem in the winter months, with “extremely high” vandalism on the property, and the director’s wife testified that she had chased deer hunters off the property. Although the director was an eighth grade teacher during the school year, his wife and children apparently were present on the property during the day. The camp trustees had previously employed part-time caretakers without success. Construction of a year-round director’s residence would, the trustees hoped, attract a year-round director with a family.
Another case involving residential property of an individual with maintenance responsibilities is Summit v. Overlook Hospital Ass’n, 4 N.J.Tax 183 (Tax 1982), aff'd, 6 N.J.Tax 438 (App.Div. 1984). Under the rationale of Monmouth Medical Center, Judge Hopkins concluded that the residences of physicians, nurses, a biomedical technician, three laboratory technicians, and x-ray technology students were all exempt because the individuals fulfilled vital roles in the medical care offered by the hospital and, as to the students, there was no reason to differentiate between housing for nursing students, which traditionally has been exempt, and housing for x-ray technology students.' Id. at 192-93. On the other hand, “specific justification” was required to exempt the residence of a subordinate maintenance man. Id. at 193. Despite the fact that the maintenance man was the only employee of the hospital with the skills to maintain the hydraulic systems and was on call 24 hours a day, the court found that his residence was not exempt because it was not sufficiently integrated into the hospital’s operations. Ibid. There was no dispute that the on-site residence of the hospital’s chief engineer was exempt.
Two cases involving exemption for the on-site residences of cemetery caretakers have some bearing. Washington Cemetery Ass’n v. South Brunswick Tp., 1 N.J.Tax 157 (Tax 1980), and Greenwood Cemetery Ass’n v. Millville, 1 N. J.Tax 408 (Tax 1980), dealt with claims for exemption of residences located on cemetery *84 grounds under N.J.S.A 8A:5-10.[3] Although the two cases involved a different statute, in Washington Cemetery, the court expressly relied on case law construing the exemption under N.J.S.A. 54:4-3.6 for buildings actually used for schools, colleges, academies or seminaries, and in Greenwood Cemetery the court implicitly accepted the reasoning of such eases under N.J.S.A 54:4-3.6. In Washington Cemetery the court found that the on-site residences of two laborers and a superintendent reduced vandalism of the cemetery. The laborers were able to see cars coming onto the cemetery property at night. In addition, the presence of these individuals on the grounds permitted interments to take place within 24 hours of death, a requirement dictated by the religious belief of many of the cemetery’s clients. In fact, burials were expected to be made on two hours’ notice and at times took place at night.
In Greenwood Cemetery, the court found that a cemetery caretaker’s second-floor residence, located over the cemetery office, was not exempt because the individual’s wife ran a business from the premises. In dicta the court stated, however, that, but for the business, the residence would have been exempt because, given “the exigencies of modern times ... providing ... an on-site residence for a cemetery superintendent to deter vandalism is as much a cemetery function as the interment of bodies.” Greenwood Cemetery, supra, 1 N.J.Tax at 411-12. This conclusion was based on testimony concerning the need for a full-time caretaker because of vandalism problems.
I am mindful of the holding in Cresskill Bor. v. Northern Valley Evangelical Free Church, 125 N.J.Super. 585, 312 A.2d 641 (App. Div.1973), that the residence of a church youth director was not exempt because
[a] building that is used in the religious work of a church and which is additionally utilized as the residence of an employee of the religious corporation (other than one *85 of the officiating clergymen), quite obviously is not being devoted exclusively to religious purposes in the ongoing work of the church.
[Id. at 587, 312 A2d 641]
I am aware as well of Teaneck Tp. v. Lutheran Bible Institute, 20 N.J. 86, 118 A.2d 809 (1955), in which the Supreme Court concluded that residences of ministers who taught at a bible institute were not exempt under the religious exemption because the residences were not used exclusively in the religious endeavors of the bible institute but were used primarily as residences for the ministers.
These eases would seem to establish that, insofar as property of religious organizations is concerned, the requirement of exclusive use is to be interpreted literally. The reason I believe this cannot be the proper interpretation is that the Monmouth Medical Center case, which construed the exclusive use requirement of the hospital exemption to require merely that the property be “reasonably necessary for the proper and efficient operation of the hospital,” was affirmed on the opinion below by our Supreme Court. See Monmouth Medical Center v. Long Branch, 73 N.J. 179, 373 A.2d 651 (1977). Once the hospital exemption was so construed, it is no longer possible to construe the religious exemption more strictly. To do otherwise would raise an issue under the First Amendment of discrimination against property of religious organizations. Consequently, the test for determining whether residential property of religious entities is exempt is the two-fold test described in Camp Brett-Endeavor. The property must be “predominantly used as an integral part of the operation of the [religious] organization ... and ... provision of the residence [must be] reasonably necessary for the proper and efficient operation of the [religious] organization.” Clinton Tp. v. Camp Brett-Endeavor, supra, 1 N.J.Tax at 60. See also Harvey Cedars v. Sisters of Charity of St. Elizabeth, 163 N.J.Super. 564, 568, 395 A.2d 518 (App.Div.1978) (so construing the religious and charitable exemption and denying an exemption for land and buildings used as a summer residence for sisters whose charitable work took place elsewhere).
*86 In sum, when exemption is sought for the residence of a maintenance man/caretaker, the test is one of reasonable necessity. Under the hospital and cemetery eases and Camp Brett-Endeavor, in order to find reasonable necessity, the exemption claimant must demonstrate a compelling need for such maintenance and caretaking, and an integration of those activities with the exempt functions of the entity.
In this case, there is insufficient evidence of a need for the Erz residence as security for the church and cemetery.
There is no history of serious vandalism in the area. Hampton Borough in the vicinity of the church is neither an urban area nor an isolated area. The church is located on Main Street and the cemetery has improved properties to the front and along one side. Vandalism of the cemetery and church has been limited to three incidents in the recent past. Since he moved into the residence in August 1992, Mr. Erz has found only one suspect person in the cemetery — a marijuana smoker. These isolated incidents do not establish a compelling need for a caretaker comparable to a hospital’s staffing needs that justify exemption for nearby residences of hospital physicians and nurses. Without staff available on a 24-hour basis, a hospital cannot function; without a caretaker St. Anris can function, and the risk of vandalism appears manageable. As there is thus insufficient evidence of a need for surveillance, it cannot be concluded that the subject property is reasonably necessary to the functioning of the church.
There is limited integration of the Erz residence with the church’s exempt functions. The Erzes’ acts to prevent vandalism of the cemetery and church have been extremely limited. Mr. Erz is not on the property at all during the day and is not needed by the church on a 24r-hour basis. While required to be in his home at night, he does not patrol the cemetery or church, but merely walks through the cemetery a few evenings a week. Assuming that the entire cemetery can be seen from the Erz residence, I am not convinced that this potential for surveillance, standing alone, is enough to exempt the residence. It appears unlikely that Mr. Erz would be aware of vandals entering the church given the distance *87 between the church and his residence and the fact that the entrance to the church cannot be seen from the Erz residence. To the extent exemption is claimed simply because an occupied house next to a cemetery deters vandals, the Erz property achieved that end when occupied by its prior owners. Given the Erzes’ limited surveillance activities, the house is no more integrated with the church’s exempt functions when owned by the church than when owned by its prior owners.
Mr. Erz does engage in fairly extensive maintenance work for the church, but none of these activities require that he reside in close proximity to the church or cemetery. He could just as well live across town or in another municipality and continue to mow the grass, plow the snow, and tend to the church furnace and repairs. Unlike the need for residences of hospital staff in close proximity to the hospital as described in Monmouth Medical Center or the residence of the director of a sanitorium on the grounds of the institution as described in Tenacre Foundation, there is no need for the church’s maintenance man to be in close proximity to the church. If there is no exemption for the residence of a hospital’s maintenance man who is on call 24 hours a day and is the only employee knowledgeable about the hospital’s hydraulic systems, there is no exemption for the Erz property on the ground that Mr. Erz provides routine, part-time maintenance services for the church. Cf. Summit v. Overlook Hospital Ass’n, supra, 4 N.J.Tax at 193. It may be convenient for the church to have Mr. Erz close at hand, but that proximity is not necessary for the operation of the church. See Monmouth Medical Center, supra, 138 N.J.Super. at 535, 351 A.2d 756 (denying exemption for offices leased to physicians for their private practices despite the fact that the offices were located close to the hospital).
Plaintiff argues that the church’s considered decision to buy the property for security and access to the rear of the cemetery should be given considerable weight in determining whether the property is reasonably necessary for the operation of the church. There is something to be said for the argument, but ultimately the question is whether the proofs establish reasonable necessity to *88 the court’s satisfaction. The proofs here do establish a need for access to the rear of the cemetery, but they do not establish a sufficient need for security. One act of vandalism in the cemetery is simply not enough.
It is true that the property was acquired for church purposes, and it is also true that the church charges no rent for the property. These facts suggest a church use rather than a private use, or in other words, that the property is being used for the convenience of the church rather than for the convenience of the Erzes. As the Appellate Division stated in Monmouth Medical Center, however, “convenience is not the test; the test is reasonable necessity____” 138 N.J.Super. at 535, 351 A.2d 756. Given the insufficient demonstration of necessity in this ease, the test has not been met. Ownership of Lot 1 may be convenient for the church, but that ownership is not reasonably necessary.
As to the demonstrated need for access to the rear of the cemetery, the portion of the subject lot needed for that purpose is approximately 20 feet according to defendant. The exemption for property owne'd by religious entities requires use entirely for the exempt purpose. Unlike the current hospital exemption, there is no provision for a partial exemption. Compare Long Branch v. Monmouth Medical Center, supra, 138 N.J.Super. at 538-39, 351 A.2d 756 (decided prior to the 1983 amendment allowing a partial exemption for hospital property and consequently denying partial exemption to a hospital clinic building on account of a lease of a portion of the building to a retail pharmacy), and Jersey Shore Medical Center v. Neptune Tp., 14 N.J.Tax 49 (Tax 1994) (decided after the 1983 amendment and consequently allowing a partial exemption of a hospital building containing a for-profit coffee shop). Thus, the exempt use of a portion of Lot 1 for access to the cemetery cannot render the property exempt if the balance of the lot is not reasonably necessary for the operation of the church.
Plaintiff concedes that, standing alone, none of the relevant factors — access to the cemetery, cemetery surveillance, and church and cemetery maintenance — might warrant tax exemption, but argues that, when the factors are considered in combination, *89 the property should be exempt. It is true that the cumulation of the relevant factors tends to show a greater integration with the church’s operation. It is not true, however, that these factors in combination demonstrate any greater need by the church. The church’s need for security, maintenance, and access remains the same whether the factors are considered singly or in combination. As indicated previously, there is an insufficient demonstration of need for security and maintenance and consequently a failure to show that the property is reasonably necessary for the operation of the church.
As the subject property is not reasonably necessary for the operation of the church, it is not exempt under N.J.S.A. 54:4-3.6. The court will therefore enter judgment affirming the judgment of the Hunterdon County Board of Taxation.

The statutory requirement that the entity claiming exemption be organized under the laws of New Jersey is no longer applicable. See WHYY, Inc. v. Glassboro Bor., 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968).

 The hospital exemption was amended by L. 1983, c., 224, to require only actual and not exclusive use.

NJ.S.A. 8A:5-10 is not implicated here because the exemption is limited to cemetery property of cemetery companies, and St. Ann's is not a cemetery company.