PIZZUTO, J.T.C.
This case concerns the taxability under the New Jersey Gross Income Tax Act (N.J.S.A. 54A:1-1 through:9-27) of the proceeds of a partial assignment of a New Jersey State Lottery prize, payable in installments over a period of years. Plaintiffs, Thomas McCauley (hereinafter “McCauley”) and his wife Loretta, filed a joint Gross Income Tax Return for 1994 and contest a deficiency assessment made by the defendant Director,of the Division of Taxation (hereinafter “Director”) with respect to then* Gross Income Tax liability for that year. In particular, the Director included in plaintiffs’ taxable income $200,000, which McCauley had received upon assignment of several installments of a State Lottery prize.
In a drawing held on or about March 16, 1987, McCauley won a “Pick-6” State Lottery prize consisting of twenty installments, the first payable immediately in the amount of $54,515 and the remaining nineteen, each in the amount of $57,500, payable annually thereafter through 2006. These figures do not reflect withholding of 20% for federal income tax, and the amounts actually paid to McCauley were net of withholding. He received the initial payment and six subsequent installments directly from the State and reported each of these seven payments as taxable income on his federal income tax returns for the years in which they were received. Since N.J.S.A. 54A:6-11 provides that “[gjross income shall not include lottery winnings from the New Jersey Lottery,” these payments were, the Director concedes, properly excluded from New Jersey gross income.
In an agreement recited to have been executed in December 1993, McCauley assigned the next five prize installments, payable on March 15 in each year from 1994 through 1998, to Singer Friedlander of New York, Inc., for a payment of $200,000. Under the agreement, the payment was conditioned on entry of a judicial order, to be acknowledged by the State, permitting the assign *583 ment and directing payment by the State to the assignee. This condition was necessary by virtue of a provision of the State Lottery statute, N.J.S.A. 5:9-13, which in the version in effect in 1994 prohibited assignment of prizes with certain exceptions, including payment “pursuant to an appropriate judicial order.” See Petition, of Singer Asset Finance Co., L.L.C., 314 N.J.Super. 116, 714 A.2d 322 (App.Div.1998); McCabe v. Director, N.J. Lottery Commission, 143 N.J.Super. 448, 363 A.2d 387 (Ch.Div.1976).[1]
Singer Friedlander’s rights under the assignment agreement were further assigned to Asset Guaranty Insurance Company, and an order permitting the assignment of the prize installments and directing their payment accordingly was entered, with the State’s consent, in Superior Court on March 4, 1994. McCauley thereupon received $200,000. He included that amount as ordinary income on his federal income tax return for 1994, but did not include it in any fashion on his New Jersey Gross Income Tax return for that year. The Director treated the entire amount as includable in gross income for 1994. After a timely protest by taxpayer, the Director issued a final determination; and this action followed. The material facts, as narrated above, have been stipulated by the parties, and cross-motions for summary judgment have been made.
The positions of the parties can be stated simply. The Director contends that the statutory exception for “lottery winnings” provided by N.J.S.A. 54A:6-11 is inapplicable to the $200,000 payment, which is considered to have been received in exchange for an asset transferred by assignment. Accordingly, the Director regards the transaction as a disposition of property resulting in a gain that is includable in gross income as part of “net gains or income from disposition of property” under N.J.S.A. 54A:5-1c. *584 The entire payment is treated as gain, since the taxpayer is considered to have a negligible basis in the asset transferred (viz. a portion of the one-dollar cost of the winning lottery ticket).
The taxpayer characterizes the $200,000 as “acceleration” of the lottery prize installments to which the N.J.S.A. 54A:6-11 exemption applies. The transaction is also described as a “loan” in which the prize installments, although absolutely transferred by the assignment agreement, are considered to repay with interest the $200,000 advanced by the lender. Finally, the taxpayer contends that, if the transaction is a disposition of property, the particular disposition does not produce taxable income by virtue of an exclusion contained within N.J.S.A. 54A:5-1c. That exclusion provides:
The term “net gains or income” shall not include gains or income derived from obligations which are referred to in clause (1) or (2) of section 54A:6-14 of this act.
N.J.S.A. 54A:6-14, in turn, provides:
Gross income shall not include interest on obligations (1) issued by or on behalf of this State or any county, municipality, school or other district, agency, authority, commission, instrumentality, public corporation (including one created or existing pursuant to agreement or compact with this or any other state) body corporate and politic or political subdivision of this State, or (2) those obligations which are statutorily free from State or local taxation under any other act of this State or under the laws of the United States.
Characterizing the lottery prize installments as obligations within the meaning of the N.J.S.A. 54A:6-14, the taxpayer argues that gain upon their disposition is excluded from taxation under N.J.S.A. 54A:5-1c.
It is a familiar principle of statutory construction that exemptions from taxation are strictly construed. GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993); Fedders Financial Corp. v. Director, Div. of Taxation, 96 N.J. 376, 384-86, 476 A.2d 741 (1984). Nevertheless, exemptions are to be construed sensibly in order to give effect to the controlling legislative design. Fairlawn Shopper, Inc. v. Director, Div. of Taxation, 98 N.J. 64, 73-74, 484 A.2d 659 (1984); Princeton Tp. v. Tenacre Foundation, 69 N.J.Super. 559, 563, 174 A.2d 601 (App.Div.1961). In this case, the necessary inquiry is whether the presumed purpose for the exemption of State Lottery win *585 nings in N.J.S.A. 54A:6-11 (i.e., the encouragement of ticket sales) also justifies an exemption for the proceeds of an assignment of lottery winnings.
N.J.S.A. 54:6-11 speaks only of winnings, not assignments or other transactions designed to realize the value of future prize installments. The provision of the State Lottery statute dealing with assignments (N.J.S.A. 5:9-13), as adopted in L. 1970 c. 13 and effective on the date of judicial approval of McCauley’s assignment, had been interpreted to prohibit this kind of transaction. McCabe, supra. To some extent, however, assignments of lottery prize installments were being permitted by judicial order under that version of the statute, as is apparent both from the approval of the McCauley transaction and the discussion in Petition of Singer, supra., at 123-124, 714 A.2d 322. The State Lottery statute has since been amended to permit assignment. See note 1, ante.
N.J.S.A. 54:6-11 was adopted as part of the original Gross Income Tax in L. 1976 c. 47, when the Lottery statute was understood to limit, if not prohibit, assignments of the kind made by McCauley. In this context, silence concerning tax consequences of assignments should not, in itself, foreclose an exemption for assignment proceeds under either the former or present statute, if the exemption is otherwise consistent with the legislative objective in exempting State Lottery prizes.
In contrast to the silence concerning assignment of lottery prizes, the Gross Income Tax Act directly addresses dispositions of those government obligations generating tax free income tax under N.J.S.A. 54A:6-14. The exclusion of gains from those dispositions provided in N.J.S.A. 54A:5-1c, which McCauley invokes, is not, of its owm force, applicable here. Nevertheless, these provisions show that when the Legislature took specific notice of the disposition of assets generating tax-free income, it excluded gain from the disposition from taxation. In other words, its purpose to encourage particular investments was implemented by exemption for both the interest and for the gain on disposition.
*586 In the Gross Income Tax Act, the Legislature’s interest in promoting the marketability of tax-exempt securities is more evident than any concern with assignment of lottery prizes. It did, however, clearly manifest a purpose to encourage lottery sales. To the extent assignment is permitted under the lottery statute, the general revenue objectives of the Gross Income Tax Act would not seem to outweigh the specific objective of N.J.S.A. 54A:6-11 to benefit lottery prize winners and thereby encourage the sale of tickets. While it may be unlikely that individual lottery participants are consciously motivated by the tax consequences of assignment, it is difficult to articulate a basis for providing an exemption for prizes, but not for proceeds from the assignment of prizes.
The Director’s denial of the exemption to McCauley in part reflects a concern that a double exemption may result, if the exemption were also available to the assignee. This decision, of course, does not address the assignee’s entitlement to the exemption. Two considerations, however, may be noted. First, the exemption pertains to the Gross Income Tax, which is incident on individuals, estates and trusts. N.J.S.A. 54A:2-1. Where the assignee is not subject to the Gross Income Tax, the double exemption issue does not arise. Second, the character of the assignee’s interest is clearly different from that of the assignor. The assignee has entered the transaction to profit from the difference between the amount paid to the assignor and the eventual prize payment. Taxation of that profit is unaffected by the logic of this decision.
Similarly, this decision does not address the determination of taxpayer’s basis, if a calculation of gain upon disposition were required. Although the parties to this action have agreed that taxpayer’s basis is not greater than the cost of the winning ticket, that conclusion does not appear beyond dispute. At the time of the drawing for a prize payable in installments, the character of the winning ticket changes from a participation in the drawing (a chance to win) to an entitlement to the installments. If N.J.S.A. 54:6-11 does not apply to the proceeds of a subsequent assignment of the right to receive one or more of the installments, the *587 exemption statute may still have an impact at the -time of the drawing. A probable conclusion would then be that the prizewinner comes to hold, without tax consequence, the right to each installment with a basis equal to its present value, at an appropriate discount rate, on the drawing date.
Finally, it is appropriate to note that the only other jurisdiction known to have addressed the question has held that an income tax exemption for a lottery prize extends to the proceeds of an assignment of prize installments Maginnis v. Department of Revenue, 14 Or. Tax 512, reh’g granted, 14 Or. Tax. 550 (Or. Tax 1999).
The Oregon court concluded:
The effect of the exemption statute is to place the prize in the hands of the taxpayer free of obligations. If a taxpayer later disposes of the prize, there is neither taxable gain nor loss.
[14 Or. Tax. at 515.]
While Oregon’s tax statutes differ from New Jersey’s, the Oregon case gives decisive significance to the legislative purpose to benefit the prize-winner. That purpose is equally manifest in the New Jersey statute and should be decisive in this case.
Accordingly, the taxpayer’s motion for summary judgment is granted and that of the Director denied.

 The statute has subsequently been amended to speedy the conditions on which State Lotterv prizes may be assigned. L. 1998, c. 103. In addition, in 1997 the State Lottery Commission adopted rules that permit the purchaser of a "Pick-6" ticket to select, at the time of purchase, either an annuity installment option or a present cash payment in the event the ticket comes to entitle the purchaser to a prize of a certain character. See Singer Asset Finance Co., L L.C. v. State, 314 N.J.Super 106, 714 A.2d 317 (App.Div.1998).