KUSKIN, J.T.C.
In Hunterdon Medical Center v. Township of Readington, 22 N.J.Tax 302 (2005), I addressed claims for property tax exemption for tax years 2000, 2001 and 2002 filed by plaintiff with respect to a three-story building (the “Building”) located in Readington Township, New Jersey, approximately nine and one-half miles from plaintiffs main hospital campus in Flemington, New Jersey. The parties agreed that the decision as to those years would govern similar exemption claims filed by plaintiff for tax years 2003, 2004 and 2005. Plaintiff claimed that portions of the Building qualified for exemption under N.J.S.A. 54:4-3.6 because they were “actually used in the work of [an] association ] [or] corporation ] organized exclusively for hospital purposes” as contemplated by that statute. The areas of the Building in issue were used *423 for the following purposes: (1) a wellness center (“Center”), (2) a cardio-pulmonary rehabilitation service (“CP Rehab Service”) located within the Center, (3) a physical therapy service (“PT Service”) also located within the Center, and (4) a pediatric practice. I denied the exemption claims as to the Center, the PT Service, and the pediatric practice, and granted the exemption claim as to the CP Rehab Service. Id. at 334-41. The Appellate Division affirmed. Hunterdon Med. Ctr. v. Township of Readington, 23 N.J.Tax 536 (App.Div.2007).
The New Jersey Supreme Court granted certification as to the eligibility for tax exemption of second-floor space in the Center occupied by the PT Service. Hunterdon Med. Ctr. v. Township of Readington, 195 N.J. 549, 951 A.2d 931 (2008). After analyzing the legal principles to be applied to a determination of whether this space qualified for exemption, the Court remanded the matter to the Tax Court as follows:
Based on the test articulated herein, we are uncertain that the Tax Court’s determination in respect of the PT Service, to which we would ordinarily accord substantial deference, should be affirmed. The integration of that Service with the HMC [(the Hunterdon Medical Center in Flemington)] seemed to be coextensive with that found for the CP Rehab Service. Also, because our definition of core “hospital purposes” would presumptively include the delivery of physical therapy services on an out-patient basis, which could be, and were at one time, provided at the main HMC campus, we question whether the PT Service at the Center should receive different treatment. Last, to the extent that the court required medical supervision, our analysis eschews such a narrow approach to the type of supervision required.
To ensure that this remaining matter is thoroughly, and properly, examined, we remand for re-examination of the PT Service. To avoid any misunderstandings on remand, we clarify that the only portion of the facility that we view as part of this remand is the PT Service space on the second floor of the Center. We narrowly viewed the question that was presented and granted on certification. We therefore hold that the only issue in this appeal was the tax-exempt eligibility of the PT Service’s second-floor space.
[Id. at 574-75, 951 A.2d 931 (footnote omitted).]
After issuance of the Supreme Court’s opinion, I convened a telephone conference with counsel for the parties to discuss the conduct of the remand proceedings. Counsel agreed that no supplementation of the trial record was necessary except that plaintiff requested permission to submit a certification (the “Regulatory Certification”) as to certain regulatory approvals relating to *424 the PT Service. I granted the request without objection from defendant. Defendant elected not to submit a responsive certification. Consequently, this opinion, which responds to the Supreme Court’s remand instructions, is based on (i) the trial record as supplemented by additional factual findings set forth below, (ii) the Regulatory Certification, and (iii) consideration of supplementary briefs and reply briefs submitted by the parties.
In my initial decision in this matter, I made the following factual findings as to the PT Service:
During 1999, 2000, and 2001, HMC offered physical therapy services at the Hospital [(plaintiffs main hospital campus in Flemington, New Jersey)] and at the .. Center. In December 2001, HMC leased physical therapy space at the Health Quest Fitness Center, a commercial health club having no other relationship with HMC and located less than one mile from the Hospital. During 2002, the outpatient physical therapy sendee previously located in the Hospital moved to an off-site office building, and physical therapy services continued to be provided at the PT Service and at Health Quest. HMC’s physical therapy department had a clinical coordinator who had no medical background, worked part-time, and was paid hourly. The department also had a medical director who was not present at the ... Building and did not review treatment plans for therapy provided at the PT Service. In 1999, the PT Sendee provided therapy to approximately twenty-five people per week. During 2000, this increased to approximately forty people per week and continued at that level in 2001 and 2002. During the years 1999 through 2002, part-time therapists were used, some of whom also worked elsewhere, including at competitors of the PT Service. Non-members of the Wellness Center could receive physical therapy from the PT Service, and could make appointments directly with the Service.
[22 N.J.Tax at 812.J
During the years under appeal, a small portion of the second floor area of the Center was used exclusively as a physical therapy treatment room. Four items of equipment outside this area were intended to be used primarily by those receiving physical therapy, but also were available for use by all members of the ... Center. All other areas and equipment in the ... Center used by the PT Service were used primarily by the general members of the Center, with usage by people receiving-physical therapy constituting a very small percentage of total usage. Anyone from the genera] public haring an appropriate prescription from a physician could obtain therapy from the PT Service. The prescription could simply instruct the therapist to treat the condition without specifying or recommending a particular form or type of therapy. No member of the Hospital's medical staff reviewed or supervised the therapy provided. The therapy staff consisted exclusively of non-physicians.
\ld. at 338.]
Based on a further review of the trial record in light of the Supreme Court’s decision, I find the following additional facts. In order for a person to utilize the PT Service, no hospital admission *425 was required. As a result of a 2003 amendment to the Physical Therapist Licensing Act of 1983, N.J.S.A 45:9-37.11 to -37.34f, particularly to N.J.S.A. 45:9-37.13, L. 2003, c. 18, § 1, a prescription from a physician no longer was required to obtain physical therapy services after February 13, 2003, the amendment’s effective date. Billing for therapy provided at the PT Service was done at plaintiff’s hospital business office. Members of the Center, as well as non-members, could make appointments at the PT Service by calling the Service directly. When the PT Service developed a treatment plan, the plan was sent to the prescribing physician, if any. The physician was not required or expected to respond. Plaintiff presented no evidence of the number of people receiving treatment at the PT Service who had been, or were about to be, admitted to plaintiffs hospital for conditions related to the therapy provided at the PT Service. Plaintiff also presented no evidence of any specific instance in which the PT Service provided charity care.
In its analysis of plaintiffs claim for exemption with respect to the portion of the Center occupied by the PT Service, the Supreme Court defined a core hospital purpose as follows:
[AJny medical service that a hospital patient may l’equire pre-admission, during a hospital stay (whether it is for less than a day or for one day or more days), or post-admission constitutes a presumptive core “hospital purpose” under N.J.S.A. 54:4-3.6.
[Hunterdon Med. Ctr., supra, 195 N.J. at 572, 951 A.2d 931.)
In formulating this definition, the Court considered regulatory sources relating to hospitals, particularly N.J.A.C. 8:43G-2.11 and -2.12, the latter of which specifies the departments that a general hospital must provide. Among those departments is physical therapy. The Court noted, however, that its “perusal of the aforementioned regulations is not intended to equate various levels of licensure as conclusive on the question of whether the use of particular hospital property should be considered eligible for tax-exempt status.” Id. at 571, 951 A2d 931 (footnote omitted).
I conclude from the Supreme Court’s analysis of “core hospital purpose” that, for the years under appeal, the PT Service “presumptively” constituted a hospital purpose under N.J.S.A. *426 54:4-3.6. The presumption, however, is not conclusive, and qualification for exemption for a facility located nine and one-half miles from the main hospital campus requires further analysis.
[Als the hospital-used property is situated away from the main hospital campus and adjacent or adjoining property, concerns about hospital integration and supervision become more pronounced, even when the use is for a core hospital purpose as identified above. In such circumstances, it is relevant that regulators examine off-site medical care facilities for functional integration and for supervision by hospital personnel for reasons complementary to the reasons that we strictly apply the tax exemption to buildings actually used for “hospital purposes” under N.J.S.A. 54:4-3.6. See N.J.A.C. 8:43G-2.11(c).
{Id. at 572-73, 951 A2d 931.]
The regulation cited by the Court in the preceding quotation, N.J.A.C. 8:43G-2.11(c), was effective February 22, 2000. It provided for separate licensure for off-site ambulatory care service facilities and required the hospital to provide documentation demonstrating the degree of integration of the off-site facility with the main hospital and describing the “medical direction” and supervision of the facility. N.J.A.C. 8:43G-2.11(e)(2). The regulation applicable to the assessment date for tax year 2000 (October 1, 1999) became effective March 20, 1995. It permitted “an outpatient clinic service ... [to be] located in a separate building at a distance from the hospital.” N.J.A.C. 8:43G-2.11(c). The regulation did not set forth criteria relating to integration with the hospital or hospital supervision of the activities in the separate building, and provided that an individual license was not required “for separate hospital buildings located on the same or adjoining grounds, if these are operated under one management.” N.J.A.C. 8:43G-2.11(d).
I understand the Supreme Court to have consulted N.J.A.C. 8:43G-2.11 and -2.12 as sources of guidance. I do not interpret the Court’s decision as incorporating the regulatory provisions into the test for exemption of an off-site facility under N.J.S.A. 54:4-3.6. The Court set forth specific factors (hereinafter referred to collectively as the “Three Factors”) to be considered in connection with an off-site facility seeking a “hospital purposes” exemption.
*427 [T]he following inquiries will test the importance and the integration of the proposed use to the hospital’s accomplishment of a legitimate task. Toward that end, the factors that a court should consider include:
1. The nature and extent of the services provided at the off-site location;
2. The extent to which the activity conducted in the facility is under the control or supervision of the hospital medical staff, or personnel;
3. "Whether the facility serves primarily hospital patients and employees or primarily members of the general public.
[Hunterdon Med. Ctr., supra, 195 N.J. at 573, 951 A.2d 931 (footnote omitted).]
When a “hospital’s off-site activity is not one for which the hospital has been licensed to perform off-site by regulatory authorities,” the following additional, but non-dispositive factors (the “Additional Factors”), must be considered:
(1) whether the facility competes with like commercial or privately owned facilities; and, even if the answer to (1) is in the affirmative, (2) whether the facility, or the particular disputed part, is actually used predominantly by patients and hospital employees or by commercial members.
[Id. at 573-74, 951 A.2d 931.]
Plaintiff contends that the PT Service was licensed and, therefore, the two Additional Factors are inapplicable. Defendant responds that, as demonstrated in the Regulatory Certification, licensure for the Center, and thus the PT Service, was not in effect until June 27, 2007. The Regulatory Certification is less than clear on the licensure status of the PT Service prior to that date. The Certification states only that the services at the PT Service “are the same as of October 1, 1999 through the current date [(August 22, 2008, the date of the Certification)],” and that plaintiff was not required to obtain specific regulatory certification or licensure from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services, in order to receive Medicaid reimbursements for services at the PT Service.
As set forth above, the applicable regulation in effect for tax year 2000, N.J.A.C. 8:43G-2.11(d), did not require a separate license for a hospital building “located on the [hospital grounds] or on adjoining grounds.” I interpret this regulation as implicitly requiring a separate license for the Building which was not located either on or adjoining plaintiffs hospital campus. As also set forth above, the applicable regulation in effect for tax years 2001 through 2005, N.J.A.C. 8:43G-2.11(c), expressly required a sepa *428 rate license for an off-site facility. Plaintiff argues that the PT Service was included in plaintiffs license for its main hospital campus. However, plaintiff has failed to demonstrate that fact or the existence of a separate license for the Building, the Center, or the PT Service. Consequently, in the following analysis, I will consider and discuss the Additional Factors.
As to the Three Factors, plaintiff asserts that the Supreme Court, in effect, determined that the Factors had been satisfied so that the PT Service was entitled to the exemption it claimed. Specifically, plaintiff refers to the following statement by the Court:
The integration of [the PT] Service with the HMC seemed to be coextensive with that found for the CP Rehab Sendee. Also, because our definition of core “hospital purposes” would presumptively include the delivery of physical therapy services on an out-patient basis, which could be, and were at one lime, provided at the main HMC campus, we question whether the PT Service at the Center should receive different treatment.
[Id. at 574, 951 A.2d 931.]
Plaintiff also relies on the Court’s following comment in a footnote to the third of the Three Factors (relating to the population served by the off-site facility):
In this regard, we agree with the Tax Court’s factual determination that die CP Rehab patients were patients of the- HMC and would reach the same conclusion for the PT patients served at the Center. See, e.g., N.J.A.C. 8:43G-2.11(c) (setting standards for hospital-based ambulatory care service facilities in respect of patient medical records, billing, and access to all hospital services).
[M. at 573 n. 16, 951 A.2d 931.]
I conclude that these statements by the Supreme Court are not dispositive of the issues before me. If, as plaintiff asserts, the Court had concluded that the PT Service qualified for exemption, no remand would have been necessary. Consequently I interpret the statements quoted above as suggestions by the Court made without the benefit of, and subject to, the “thorough!]” and “proper! ]” examination of the PT Service be made in the context of the remand proceedings. Id. at 574, 951 A.2d 931. The Court remanded because of its uncertainty as to whether the PT Service qualified for exemption under the tests that the Court established. Thus, the Court carefully noted that integration of the PT Service with plaintiffs main hospital “seemed” to be similar to the inte *429 gration of the CP Rehab Service, without finding or concluding that the two services were similarly integrated with plaintiffs main hospital.
The Court’s statement in the footnote quoted above, that it would conclude that PT Service patients were as much patients of plaintiffs hospital as were patients of the CP Rehab Service, must be read in light of the language of the Third Factor where the footnote appeared. In this Factor, the Court recognized a dichotomy between “hospital patients and employees” and “members of the general public” as users of the PT Service. If every user of the PT Service were a patient of plaintiffs hospital, then the dichotomy would be meaningless. Consequently, I interpret the footnote as expressing only a preliminary conclusion as to “patient” status and not as superseding the purpose of the remand.
A determination of whether the PT Service qualified for exemption for the tax years at issue requires a separate analysis under each of the Three Factors. In making these analyses, I rely on the factual findings set forth in my opinion reported at 22 N.J.Tax 302, the supplemental factual findings set forth above, and the contents of the Regulatory Certification.
As to the first of the Three Factors (the “nature and extent of the services provided”), I find and conclude that the physical therapy services provided at the PT Service were among those previously provided within the main hospital building. Thus, the PT Service might be deemed paid of a hospital physical therapy service contemplated by N.J.A.C. 8:43G-2.11(d). However, the record is barren of facts establishing that the services at the PT Service were required or provided “pre-admission, during a hospital stay ..., or post-admission.” Hunterdon Med. Ctr., supra, 195 N.J. at 572, 951 A.2d 931. Consequently, I conclude that plaintiff failed to establish facts sufficient to give rise to a presumption that the services provided at the PT Service constituted a “core hospital purpose” as defined by our Supreme Court.
The second of the Three Factors relates to the extent to which an off-site service is “under the control or supervision of the hospital medical staff, or personnel.” I find and conclude that the *430 degree of control or supervision by hospital medical staff and personnel with respect to the PT Service was substantially and significantly less than their control and supervision of the CP Rehab Service. The following table compares the two services.
CRITERION CP REHAB SERVICE PT SERVICE
1. Obtaining services Registration at main hospital admissions office was required. Referral by a physician office was required. Approval by the referring physician of the proposed treatment plan was required. Periodic progress reports were sent to the referring physician. Registration at the PT Service was permitted. A copy of the proposed plan for ther apy was sent to the referring physician but no approval was required. As of February 13, 2003, no physician referral or prescription was required.
2. Control and supervision by hospital medical staff The medical directors of cardiac rehabilitation and pulmonary rehabilitation reviewed treatment plans and medical records for persons referred by physicians not on the hospital staff. The hospital medical director of physical therapy did not review treatment plans. The physical therapy department was run by a part-time clinical coordinator with no medical background.
3. Control and supervision by other hospital personnel Billing was done through the hospital business office. Budgeting and capital expenditures were determined by hospital business personnel. Therapy service was provided by a hospital-employed registered nurse. The service was under the general supervision of the Vice-President of Patient Care Services (other services under the same supervision included surgical, intensive care unit, infection control, pediatries, respiratory, pulmonary, and pharmacy). Billing was done through the hospital business office. Budgeting and capital expencStures were determined by hospital business personnel. Therapy service was provided by hospital-employed licensed physical therapists. The service was under the general supervision of the Vice-President of Physician Practices (other services under the same supervision were family health centers, physician practices, and senior services.)
The foregoing table demonstrates that the hospital medical staffs involvement in the PT Service was substantially less than the medical staffs involvement in the CP Rehab Service, and that, other than in connection with billing and budgeting procedures, plaintiff itself treated the PT Service as different from the CP Rehab Service for administrative purposes. Particularly notewor *431 thy is the assignment of supervision of cardio-pulmonary rehabilitation to the Vice-President of Patient Care Services who also was responsible for other services that appear to fit the definition of a core hospital purpose. This contrasts with the assignment of supervision of physical therapy to the Vice-President of Physician Practices, whose other responsibilities related to services that appear to be ancillary to the core functions of plaintiffs hospital.
As to the third of the Three Factors (whether the off-site facility serves “primarily hospital patients and employees or primarily members of the general public”), I previously found and concluded that plaintiff “failed to establish that the PT Service served primarily Hospital patients who were referred to the service for continuation of treatment.” Hunterdon Med. Ctr., supra, 22 N.J.Tax at 339. Based on my review of the trial record, my supplemental fact findings above, and the remand briefs, I conclude that my previous finding and conclusion remain valid especially in light of the Supreme Court’s definition of a “core hospital purpose” as one consisting of services required preceding admission to a hospital, during a hospital stay, or following admission to a hospital. Plaintiff failed to establish that users of the PT Service were primarily patients that had been admitted to, or were about to be admitted to, plaintiffs hospital, or hospital employees. I infer from the proofs presented that users of the PT Service were primarily members of the general public.
Based on the foregoing discussion of the Three Factors, I conclude that the PT Service was not a “hospital purpose” under N.J.S.A. 54:4-3.6. An analysis of regulatory provisions similar to the analysis conducted by the Supreme Court provides support for my conclusion. Under N.J.A.C. 8:43G-5.2(e), a hospital “shall not deny admission to patients on the basis of their inability to pay.” As noted above, plaintiff failed to prove that the PT Service had provided or would provide therapy to a person unable to pay. The regulations relating specifically to physical therapy services imposed specific requirements for the conduct of a hospital physical therapy department, including a requirement for a lavatory facility. N.J.A.C. 8:43G-29.8(c). No such facility existed at the PT Service or at the Center. The regulations also required that *432 hospital physical therapy services “be available on-site.” N.J.A.C. 8:43G-29.6(a). The PT Service was neither on-site at plaintiffs hospital nor was the PT Service connected with an on-site physical therapy service. These regulatory requirements are not conclusive as whether the PT Seivice constituted a “hospital purpose” under N.J.S.A. 54:4-3.6, but they do illustrate the deviation of the PT Seivice from standards applicable to hospitals.
In support of its contention that the PT Seivice fulfilled a hospital purpose under N.J.S.A. 54:4-3.6, plaintiff submitted, in the Regulatory Certification, accreditations from the Joint Commission on Accreditation of Healthcare Organizations. Examination of the accreditation documents reveals that, at least until 2005, the accreditations did not extend to the PT Service. A letter dated May 18, 1999, stated that the only site of care, other than the main hospital campus, covered by the accreditation was the Hunterdon Regional Community Health Building in Flemington. An Accreditation Decision Report of September 2002 stated that the accreditation was awarded to plaintiff “including your hospital based substance abuse treatment services, hospital based adult mental health partial hospitalization treatment program, and home health care seivices as provided of home health and personal care and support services.” The Commission’s accreditation letter dated October 26, 2005 covered the hospital and plaintiffs ambulatory health care program, behavioral health care, and home care programs. Neither this letter nor the survey findings attached to it make any mention of the Center or the PT Service. Plaintiffs Director of Finance has certified that the Center was included in the accreditation.
Because plaintiff has failed to establish that the PT Seivice was licensed during all of the years at issue in this matter, I will address the Additional Factors set forth by the Supreme Court, namely, whether the PT Service competed with “like commercial or privately owned facilities” and whether the Service actually was used “predominantly by patients and hospital employees or by commercial members.” Hunterdon Med. Ctr., supra, 195 N.J. at 574, 951 A.2d 931. The latter factor is virtually identical to the third of the Three Factors. Consequently, I find and conclude, as *433 I did with respect to the third Factor, that plaintiff failed to establish predominant or primary use of the PT Service by hospital patients and hospital employees.
With respect to the first Additional Factor, the proofs established that the PT Service competed with other physical therapy services operated by plaintiff, one of which was located in a nearby privately-owned health club. The proofs did not establish direct competition with private or commercial operations in the immediate area of the Building, but did establish that several private physical therapy providers were located in the vicinity of plaintiffs main hospital campus in Flemington. Based on the record, I cannot determine whether, or the extent to which, the PT Service competed with the providers in the area of the hospital. As a result, the first Additional Factor in itself does not provide a basis for denying an exemption to the PT Service.
Plaintiff had the burden of establishing that the PT Service qualified for exemption. Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 363, 221 A.2d 15 (1966). Based on the preceding discussion and analysis, I find and ■ conclude that, under the standards set forth by our Supreme Court in its Hunterdon Medical Center opinion, plaintiff failed to demonstrate that, for the years in issue, the second-floor area of the Center devoted to the PT Service qualified for the “hospital purposes” exemption under N.J.S.A. 54:4-3.6. Judgment will be entered accordingly.